# United States Court of Appeals
### For the Eighth Circuit

_____

No. 25-2277
_____

Jquan Leearthur McInnis

*Petitioner - Appellant*

v.

William Bolin, Warden

*Respondent - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 19, 2026
Filed: July 2, 2026

_____

Before COLLOTON, Chief Judge, GRUENDER and KOBES, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Jquan Leearthur McInnis fired seven shots through a car at Gustav Christianson, killing Christianson and an infant, J.R., seated near him. After a bench trial on stipulated evidence, a Minnesota trial court convicted McInnis of two counts of first-degree murder and sentenced him to two consecutive sentences of life imprisonment with the possibility of parole. After unsuccessfully appealing those

convictions to the Minnesota Supreme Court, McInnis petitioned the district court[1] for a writ of habeas corpus. In his petition, McInnis contends that the Minnesota Supreme Court incorrectly ruled that the trial court's consideration of inculpatory statements that he had made to investigators after invoking his right to remain silent constituted harmless error. *See Miranda v. Arizona*, 384 U.S. 436 (1966). A magistrate judge recommended denying McInnis's habeas petition but granting him a certificate of appealability on the Minnesota Supreme Court's harmless error determination. The district court adopted the magistrate's recommendations and granted a certificate of appealability on that issue. We affirm the denial of McInnis's petition.

## I. Background

Shortly after 1:00 p.m. on October 9, 2016, McInnis, then a juvenile, saw Christianson in the back seat of a parked car in downtown Minneapolis, approached the car from an alley, and fired six shots from a handgun at close range, killing him. As McInnis turned away from the scene, he fired a final shot through the car's rear window that struck and killed J.R. McInnis then fled the scene by car with D.A., an associate who had driven him to the area.

In the days following the shooting, investigating officers learned that McInnis had been in a dispute with Christianson over $250 and had told D.A. that he had "hit" a baby. McInnis's girlfriend also told officers that McInnis told her that he regretted killing a baby but did not regret killing Christianson. Officers also collected forensic and audiovisual evidence, including evidence from Minneapolis's Shot Spotter system, indicating that the shooter had fired seven shots in quick succession and that the final shot that killed J.R. had come through the car's rear window toward Christianson.

---

[1]The Honorable Patrick J. Schiltz, Chief Judge, United States District Court for the District of Minnesota, adopting the report and recommendations of the Honorable Douglas L. Micko, United States Magistrate Judge for the District of Minnesota.

Shortly thereafter, officers picked up McInnis and gave him a *Miranda* warning. During initial questioning, McInnis denied having any involvement in the shootings and claimed that he had an alibi. After roughly an hour and fifteen minutes of further questioning, McInnis told officers that he "ha[d] nothing else to say now because now I feel like . . . I'm a suspect and I don't wanna talk about this anymore because I know I didn't have anything to do with this." Officers continued to question McInnis, however, and eventually elicited a partial confession. Specifically, McInnis told officers that he "walked up on the car and [I] hit [Christianson] like four or five times—boom, and then when I, right before I ran off [sic] I threw one more through the window—bam—and then I ran off." McInnis maintained, however, that he did not intend to kill Christianson and did not know there was an infant in the car at the time of the shooting.

Minnesota charged McInnis with two counts of first-degree murder. Before trial, McInnis moved to suppress his confession because he gave it only after invoking his Fifth Amendment right to remain silent. The state trial court denied his motion on the basis that McInnis did not unambiguously and unequivocally invoke the right before making the inculpatory statements. The case then proceeded to a bench trial on stipulated evidence, including the confession. The state trial court found McInnis guilty on both counts of first-degree murder. The court found that the manner of shooting itself foreclosed any reasonable doubt as to McInnis's intent to kill Christianson. The court then applied the doctrine of transferred intent and concluded that the state had proven beyond a reasonable doubt that McInnis intended to kill Christianson when he fired the seventh shot that killed J.R. *See* Minn. Stat. § 609.185(a)(1) (2020) (defining murder in the first degree for causing the death of a person with premeditation and intent to cause the death "of the person or another"). The court based its conclusion on the following evidence: (1) there was "only a moment or matter of moments between the first round of shots" at Christianson and "the final shot . . . through the window" that struck J.R.; (2) McInnis "was still close to the vehicle when he fired the final shot"; (3) there was "no evidence that anyone at the scene retaliated or advanced towards [McInnis]" before the final shot; and (4) McInnis did not tell officers that "he was being chased or was fearful" when he fired

-3-

the final shot but rather that he simply "threw one more through the window." Shortly after its verdict, the state trial court sentenced McInnis to two consecutive terms of life imprisonment, each with the possibility of parole after thirty years.

McInnis unsuccessfully appealed his convictions and sentence to the Minnesota Supreme Court, arguing, in part, that the trial court erred in failing to suppress his confession and that there was insufficient admissible evidence of his intent to kill J.R. The Minnesota Supreme Court agreed that the confession should have been suppressed but ruled that its admission was harmless beyond a reasonable doubt and thus did not require overturning his convictions. In particular, the court noted that McInnis's confession did not relate to his intent and premeditation and, regardless, there was "overwhelming" admissible evidence of intent and strong evidence of premeditation in the record. Likewise, the court concluded that, even ignoring McInnis's statements to police, the evidence in the record did "not support a reasonable inference other than guilt" for the murder of J.R. Specifically, the court emphasized that McInnis's intent during the final shot was established beyond a reasonable doubt given the trajectory evidence showed the "shot was aimed *at or past* [Christianson's] head" and "[t]here was only a moment or matter of moments between the first six shots and the final shot."

In December 2022, McInnis timely filed a petition under 28 U.S.C. § 2254 for a writ of habeas corpus in the district court, arguing that the Minnesota Supreme Court unreasonably applied clearly established federal law in holding that the improper admission of his confession was harmless beyond a reasonable doubt. The magistrate judge recommended denying McInnis's petition but granting a certificate of appealability because "jurists of reason would find it debatable" whether the admission of his confession was harmless. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The district court adopted the magistrate judge's recommendations and granted the certificate of appealability because the court shared the magistrate judge's "grave doubt" about the effect of McInnis's confession on the trial court's guilty verdict concerning J.R.'s murder. McInnis now appeals the district court's denial of his habeas petition only with respect to his conviction for J.R.'s murder.

-4-

## II. Discussion

In reviewing a district court's denial of habeas relief, we review findings of fact for clear error and conclusions of law *de novo*. *Bell v. Att'y Gen. of Iowa*, 474 F.3d 558, 560 (8th Cir. 2007). McInnis contends that that district court erred in failing to grant his petition under 28 U.S.C. § 2254 because the Minnesota Supreme Court unreasonably applied clearly established law in ruling that the trial court's consideration of his inadmissible confession was harmless beyond a reasonable doubt with respect to his conviction for the murder of J.R. To succeed on this claim, McInnis faces a substantial burden. For one, he must persuade us that we should harbor "grave doubt" as to whether the trial court's improper admission of his confession affected its verdict. *See Brown v. Davenport*, 596 U.S. 118, 135-136 (2022). For another, he must meet the requirements for habeas relief outlined in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See id.* at 145. In this case, that means he must establish that the Minnesota Supreme Court's harmless error determination "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1). As the district court noted, § 2254(d)(1) imposes a high bar, permitting relief only if McInnis convinces us that "every fairminded jurist" would conclude that the admission of McInnis's confession was prejudicial under Supreme Court precedent. *See Davenport*, 596 U.S. at 136.

We agree with the district court that McInnis has failed to make the requisite showing under AEDPA.[2] The Minnesota Supreme Court applied the harmless error standard articulated in *Chapman v. California*, 386 U.S. 18, 24 (1967). *See State v. McInnis,* 962 N.W.2d 874, 886-90 (Minn. 2021) (citing Minnesota cases applying *Chapman*). Under *Chapman*, a trial court's constitutional error is harmless where the state has demonstrated "beyond a reasonable doubt that the error complained of

---

[2]Because we affirm the denial of McInnis's habeas petition under § 2254(d)(1), we need not reach whether we share the district court's "grave doubt" as to the effect of his confession on the trial court's verdict.

did not contribute to the verdict obtained." *Neder v. United States*, 527 U.S. 1, 15 (1999). In reaching its harmless error determination, the Minnesota Supreme Court evaluated the trial court record and found that McInnis's convictions on both counts were "surely unattributable to the erroneously admitted confession." On the specific issue of intent, the court identified "overwhelming" admissible evidence of McInnis's intent to kill Christianson during his first six shots. It then found that the state's evidence as to the timing and trajectory of the final shot foreclosed any inference that McInnis did not intend to kill Christianson when he shot J.R. Accordingly, the court held that the trial court's consideration of McInnis's improperly obtained confession in reaching its guilty verdict for J.R.'s murder was harmless beyond a reasonable doubt.

We cannot disturb that judgment unless McInnis shows that it was "so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'" *See Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). He has not done so. Although McInnis characterizes the state's admissible evidence of his intent upon firing his final shot as not "overwhelming," a fairminded jurist could conclude that a reasonable factfinder presented with the state's timing and trajectory evidence would find the state proved beyond a reasonable doubt that McInnis possessed the requisite intent to kill Christianson. As such, we see no basis for McInnis's assertion that the trial court's verdict depended on its improper consideration of his failure to tell officers that "he was being chased or was fearful" when firing the final shot. Moreover, McInnis's suggestion that the admission of his improperly obtained confession was harmful *per se* falls short because, in his confession, he denied ever intending to kill Christianson. *Cf. Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) (noting that admission of an improperly obtained "full confession" is likely to be prejudicial because such a confession "may tempt the jury to rely upon that evidence alone in reaching its decision"). Therefore, we agree with the district court that the Minnesota Supreme Court's application of harmless error doctrine fell within the bounds of "fairminded disagreement." *See Shinn,* 592 U.S. at 118.

## III. Conclusion

Accordingly, we affirm the district court's denial of McInnis's petition for a writ of habeas corpus.

_____